Fernando Segoviano Almanza
Name and Prisoner/Booking Number

Ariz. Dept. of Corrections - SMU I
Place of Confinement

P.O. Box 4000
Mailing Address

Florence, Az 85132
City, State, Zip Code

**(Failure to notify the Court of your change of address may result in dismissal of this action.)**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

FERNANDO SEGOVIANO ALMANZA,
(Full Name of Petitioner)
                        Petitioner,

vs.

Charles L. Ryan
(Name of the Director of the Department of
Corrections, Jailor or authorized person having
custody of Petitioner)

                        Respondent,
                        and
The Attorney General of the State of Arizona,

                        Additional Respondent.

CASE NO. _____
         (To be supplied by the Clerk)

**PETITION UNDER 28 U.S.C. § 2254
FOR A WRIT OF HABEAS CORPUS
BY A PERSON IN STATE CUSTODY
(NON-DEATH PENALTY)**

## PETITION

1.  (a) Name and location of court that entered the judgment of conviction you are challenging: Pinal County Superior Court, 971 Jason Lopez Circle, Bldg A Florence, Az. 85132

    (b) Criminal docket or case number: CR 2011-03026

2.  Date of judgment of conviction: October 7th, 2013

3.  In this case, were you convicted on more than one count or crime?     Yes ☒     No ☒

**530**

4. Identify all counts and crimes for which you were convicted and sentenced in this case: _____
Count 1: Sexual Conduct with a minor, under the age of 12 years

5. Length of sentence for each count or crime for which you were convicted in this case: _____
Life imprisonment

6. (a) What was your plea?
   Not guilty                          ☒
   Guilty                              ☐
   Nolo contendere (no contest)        ☐

   (b) If you entered a guilty plea to one count or charge, and a not guilty plea to another count or charge, give details: _____

   (c) If you went to trial, what kind of trial did you have? (Check one)   Jury ☒      Judge only ☐

7. Did you testify at the trial?   Yes ☐   No ☐

8. Did you file a direct appeal to the Arizona Court of Appeals from the judgment of conviction?
   Yes ☒   No ☐

   If yes, answer the following:

   (a) Date you filed: _____May 1st, 2014_____

   (b) Docket or case number: ___2CA-CR 2014-0034___

   (c) Result: __Conviction Affirmed__

   (d) Date of result: ____August 29, 2014____

   (e) Grounds raised: 1) Did the Court Err in determining Appellant's statements were voluntary 2) Was it fundamental Error to admit to Rule 404(b) Prior bad acts evidence. 4) Did the Court Err in failing to Grant a directed verdict of acquittal for insufficient Evidence  3) were appellants 5 & 6th Amendment rights violated when a jailhouse snitch obtained incriminating statements from appellant.

Attach, if available, a copy of any brief filed on your behalf and a copy of the decision by the court. (Exhibit I)(Exhibit II)

9. Did you appeal to the Arizona Supreme Court?      Yes ☐      No ☒

If yes, answer the following:

(a) Date you filed: _____

(b) Docket or case number: _____

(c) Result: _____

(d) Date of result: _____

(e) Grounds raised: _____

_____

_____

_____

_____

**Attach, if available, a copy of any brief filed on your behalf and a copy of the decision by the court.**

10. Did you file a petition for certiorari in the United States Supreme Court?  Yes ☐      No ☒

If yes, answer the following:

(a) Date you filed: _____

(b) Docket or case number: _____

(c) Result: _____

(d) Date of result: _____

(e) Grounds raised: _____

_____

_____

_____

_____

**Attach, if available, a copy of any brief filed on your behalf and a copy of the decision by the court.**

11. Other than the direct appeals listed above, have you filed any other petitions, applications or motions concerning this judgment of conviction in any state court?      Yes ☒      No ☐

If yes, answer the following:

(a) First Petition.

(1) Date you filed: _November 25th, 2013_

(2) Name of court: _Pinal County Superior Court_

(3) Nature of the proceeding (Rule 32, special action or habeas corpus): _New trial – Rule 59_
_of Federal civil rules of Procedure_
(4) Docket or case number: _CR-2011 03026_

(5) Result: _irrelevant – The statute, the rule is inappropriate – denied_

(6) Date of result: _February 14th, 2014_

(7) Grounds raised: _request for new trial – filed by assistance of_
_fellow inmate. No grounds raised as far as can be determined_
_other than inmate "was unaware" of his current status and_
_complete confusion of his predicament._
_Motion is unavailable at this time._

Attach, if available, a copy of any brief filed on your behalf and a copy of the decision by the court.

(b) Second Petition.

(1) Date you filed: _March 19th, 2015_

(2) Name of court: _Pinal County Superior Court_

(3) Nature of the proceeding (Rule 32, special action or habeas corpus): _Rule 32_

(4) Docket or case number: _CR 2011 03026_

(5) Result: _Appointment of Counsel Richard Luff_

(6) Date of result: _April, 06th, 2015_

(7) Grounds raised: _None as of this writing. To Mr. Almanzas_
_, defendant, Appellants knowledge Mr. Luff has yet to make_
_contact nor file any brief. Appellant has notified the court of_
_this error and is currently requesting new counsel with leave_
_to extend time to file Rule 32 when new appointment is ordered._
_Motion attached Exhibit III_

Attach, if available, a copy of any brief filed on your behalf and a copy of the decision by the court.

(c) Third Petition.

(1) Date you filed: _____

(2) Name of court: _____

(3) Nature of the proceeding (Rule 32, special action or habeas corpus): _____

(4) Docket or case number: _____

(5) Result: _____

(6) Date of result: _____

(7) Grounds raised: _____

_____

_____

_____

_____

Attach, if available, a copy of any brief filed on your behalf and a copy of the decision by the court.

(d) Did you appeal the action taken on your petition, application, or motion to the:

|  | Arizona Court of Appeals: | | Arizona Supreme Court: | |
|---|---|---|---|---|
| (1) First petition: | Yes ☒ | No ☐ | Yes ☐ | No ☒ |
| (2) Second petition: | Yes ☐ | No ☒ | Yes ☐ | No ☒ |
| (3) Third petition | Yes ☐ | No ☐  N/A | Yes ☐ | No ☐ |

(e) If you did not appeal to the Arizona Court of Appeals, explain why you did not: _____
(2) Second petition - made by fellow pre-trial detainee who did not know
of even how to write petition and grounds for New trial.
(3) As of this writing Appellate Counsel has yet to contact defendant or
File any brief, as far as defendant is aware of. Pending New motion for
appointment of counsel.
_____

12. For this petition, **state every ground on which you claim that you are being held in violation of the
Constitution, laws, or treaties of the United States.** Attach additional pages if you have more than four
grounds. State the facts supporting each ground.

**CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-
court remedies on each ground on which you request action by the federal court. Also, if you fail to set
forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.**

**GROUND ONE:** Did the Court Errin determing Appellant's statements were voluntary?

(a) Supporting FACTS (Do not argue or cite law. Just state the specific facts that support your claim.):

Defendant is illiterate in english and spanish. Defendant is a mexican immigrant with mental deficiencies as attested by his trial attorney and subsequent mental evaluation and this interpreters experience in speaking with defendant. Mr Almanza in no way would have understood his Miranda rights without repeated and properly translated warnings and rights available in this country. Mr. Almanza was in police custody at the time of interrogation, the Spanish interpreter was unqualified, his Miranda rights were given inaccurately and statements were made involuntary. (See Exhibit I opening brief).

I am a spanish speaker, but I can state as a matter of fact I am unqualified to properly interpret an interrogation. One must be able to translate all words and meanings clearly and convey all proper rights. What I can state clearly is the defendant stated unambiguously that Mr Almanza replied "NO" when asked "Q. So you understand your right and you want to answer questions?" The interrogation by all rights should have ended there. It was not.

The officers even went further by stating to Mr. Almanza that "...if you can't afford one (attorney), then the Court can appoint one at a—at a later time."

The judge erred in determing there was no arrest, merely an investigation. That Mr. Almanza's english was "good enough." The Court of appeals erred in finding Almanza's statements were voluntary (see Exhibit III (Decision)).

The police went further by lying, that one evidence was found. The interrogators use impermissable deception, lying, misinterpreting and violated the rules of conduct.

(b) Did you present the issue raised in Ground One to the Arizona Court of Appeals? Yes ☒    No ☐

(c) If yes, did you present the issue in a:
  Direct appeal           ☒
  First petition          ☐
  Second petition         ☐
  Third petition          ☐

(d) If you did not present the issue in Ground One to the Arizona Court of Appeals, explain why: _____

(e) Did you present the issue raised in Ground One to the Arizona Supreme Court? Yes ☐    No ☒

**GROUND TWO:** Was it Fundamental error to admit to Rule 404 (b) prior Bad acts evidence?

(a) Supporting FACTS (Do not argue or cite law. Just state the specific facts that support your claim.):

The State did not provide notice of prior bad acts, as required by Rule 15.1. The State failed to advise the Court of likely use of prior bad acts in order to obtain a ruling on relevancy of the prior bad acts. There was no judicial weighing of the probative value of the prior bad acts. There was no limiting instructions.

There was no similarity between the molestation of a 4yrold to "groping" an adult. There was no evidence that Mr. Almanza "sexually harassed" the mother (Ms Q.). The mother never reported any alleged misconduct to any co-workers or employer. Certainly any "groping, peeping, wrongful entry in home or butting up against an adult female would warrant at least some evidence - even to a friend or co-worker. Their was no DNA. The victim reported an insertion of a finger with sharp nails. Some evidence was to be left behind.

A sharp nail would have cut a 4yr olds private area beyond a mere abrasion. The 4yrold reported being hit by a shovel - on the "back". No evidence was even discovered of any such impact.

Dr. Klein agreed the small abrasion could have been caused by something else. This abrasion was an external, not vaginal, abrasion. As a long sharp nail would have caused if an adult male inserted a finger in a 4yr olds vagina.

The worst that Mr. Almanza stated was he lifted the 4yr old by the seat of her pants. As customary with 4 yr olds. No sexual act was ever intended at worst it was an unintentional inadvertent contact. Not illegal and certainly not chargeable, correctable and doomed to spend his life in prison. No corroboration was ever established to warrant conviction - the court and appeal court erred in not dismissing the charge.

(b) Did you present the issue raised in Ground Two to the Arizona Court of Appeals? Yes ☒   No ☐

(c) If yes, did you present the issue in a:

Direct appeal ☒
First petition ☐
Second petition ☐
Third petition ☐

(d) If you did not present the issue in Ground Two to the Arizona Court of Appeals, explain why: _____

(e) Did you present the issue raised in Ground Two to the Arizona Supreme Court? Yes ☐   No ☒

**GROUND THREE:** Was Appellant's 6th Amendment right to counsel and 5th Amendment right not to incriminate himself violated when incriminating statements were elicited by a government agent after indictment while in custody? Should the statement of Boggs have been suppressed?

(a) Supporting FACTS (Do not argue or cite law. Just state the specific facts that support your claim.):

Boggs a jail inmate (pretrial) began a relationship with Mr. Almanza. Boggs a career criminal gained Mr. Almanza's confidence. Boggs was able to read all of Mr. Almanza's files and indictment. Mr. Boggs after realizing he could use Mr. Almanza went to the State and "volunteered" to testify in exchange for a sweetheart deal.

Mr. Boggs was so interested in "helping" Mr. Almanza and wanting to get out of jail ASAP. That Mr. Boggs wrote and helped file a Motion For Fast and Speedy trial on Feb. 23 of 2012 (See Exhibit IV.)

Boggs was a g.p. (general population) inmate, no sexual charges were evident. While Mr. Almanza was a s.o. (sex offender) inmate. The two should never have been in the same location. It is no secret that g.p. inmate will do whatever it takes to purposely harm an s.o. inmate. This includes killing of s.o. inmates. It is why states separate g.p. from s.o. inmates. Boggs may have well killed Mr. Almanza by getting ahold of Almanza's paperwork and "lying in court. The bonus was getting a more favorable plea agreement. Boggs acted as an agent of the State when Boggs contacted the detectives. Boggs was left in the area of Mr. Almanza.

On June 12, 2012, in a Motion For Disclosure, attorney Huggins specifically requested particulars surrounding the police deal with the Cal. (Boggs). Mr. Cereen, Almanza's trial attorney did not address the topic nor object at trial.

The appeals court erred in not reversing the conviction or at the minimal ordering an evidentiary hearing to determine facts not in evidence to prove the defendant's assertion of violating Mr. Almanza's constitutional rights.

(b) Did you present the issue raised in Ground Three to the Arizona Court of Appeals? Yes ☒  No ☐

(c) If yes, did you present the issue in a:
- Direct appeal ☒
- First petition ☐
- Second petition ☐
- Third petition ☐

(d) If you did not present the issue in Ground Three to the Arizona Court of Appeals, explain why: ____

(e) Did you present the issue raised in Ground Three to the Arizona Supreme Court? Yes ☐  No ☒

**GROUND FOUR:** Did the Court err in failing to Grant a directed verdict of acquital for insufficient Evidence?

(a) Supporting FACTS (Do not argue or cite law. Just state the specific facts that support your claim.):

Defense counsel made a Rule 20 motion which was denied.
The State failed to prove all elements of child molestation.
Mr. Almanza never knowingly touched Ada's privates.
The victims assertion that Mr. Almanza inserted a finger in her privates then struck her in the back with a shovel was never corroborated by any physical or DNA evidence.
If the "victim" embellished or out right lied about being struck with a shovel what else did the "victim" embellish or lie about?
The states own Dr. Klein agreed the small abrasion could have been caused by something else.
It was never proven beyond the shadow of a doubt or any significant weight that Mr. Almanza knowingly and willingly inappropriately touched the "victim".
Bonys the states "jailhouse snitch" only had a self serving interest by lying in court about Mr. Almanza confessing to inserting a finger in the "victim".
Bonys was a general population inmate with an ax to grind in a sexual offender pre-trial inmate. Bonys had full access to Mr. Almanza's legal paperwork. Bonys got a sweetheart deal due to his testimony. A full and fair hearing has ever been had to determine the culpability of the state in utilizing Bonys as a jailhouse snitch and secreting information in order to testify for the state. It is improbable that Bonys was only "conscious stricken by reporting the "admittance of sexual misconduct" to detective's. Mr. Bonys tried to speed up the trial purpose proceedings in order to get the sweetheart deal faster. (see Exhibit IV) Motion written by Bonys. The court erred in not reversing.

(b) Did you present the issue raised in Ground Four to the Arizona Court of Appeals? Yes ☒    No ☐

(c) If yes, did you present the issue in a:

Direct appeal ☒
First petition ☐
Second petition ☐
Third petition ☐

(d) If you did not present the issue in Ground Four to the Arizona Court of Appeals, explain why: _____

(e) Did you present the issue raised in Ground Four to the Arizona Supreme Court? Yes ☐    No ☒

**Please answer these additional questions about this petition:**

3. Have you previously filed any type of petition, application or motion in a federal court regarding the conviction that you challenge in this petition?   Yes ☐   No ☒

    If yes, give the date of filing, the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy of any court opinion or order, if available: _____

_____

_____

_____

_____

14. Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, as to the judgment you are challenging?   Yes ☒   No ☐

    If yes, give the date of filing, the name and location of the court, the docket or case number, the type of proceeding, and the issues raised: Filed Motion for appointment of New Counsel and extension of time to file Rule 32 due to trset appointed attorney Richard Luff, not contacting Mr. Almanza nor filing any brief, what soever.

_____

_____

15. Do you have any future sentence to serve after you complete the sentence imposed by the judgment you are challenging?   Yes ☐   No ☒

    If yes, answer the following:

    (a) Name and location of the court that imposed the sentence to be served in the future: _____

_____

_____

    (b) Date that the other sentence was imposed: _____

    (c) Length of the other sentence: _____

    (d) Have you filed, or do you plan to file, any petition challenging the judgment or sentence to be served in the future?   Yes ☒   No ☐

16. TIMELINESS OF PETITION: If your judgment of conviction became final more than one year ago, you must explain why the one-year statute of limitations in 28 U.S.C. § 2244(d) does not bar your petition.*

Mr. Almanza a max. national there on VISA can not understand or read letters, documents etc. sent to him. It was not until March 19th 2015 that a fellow inmate read Mr. Almanza's papers to inform Mr. Almanza that Attorney Lynn T. Hamilton (Rule 31 attorney) had filed a Rule 31 and the court of appeals affirmed his conviction. Mr. Almanza through inmate, then filed a PCR Rule 32 motion. The State granted the motion, for cause. Appointing counsel Mr. Richard Lott, who has yet to file any document nor contact Mr. Almanza. Mr. Almanza was not made aware he could appeal to the Ariz. Supreme Court nor file a habeas Corpus. Unt.) I, a fellow inmate (not the same as Rule 32 inmate) informed Mr. Almanza of his right to file an appeal to the Fed's by way of habeas Corpus Section 2244. The State never reasonably *informed Mr. Almanza on his rights (in spanish-verbally).  (Exhibit III)  See

*Section 2244(d) provides in part that:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

17. Petitioner asks that the Court grant the following relief: Review and reverse the conviction. Remand for new trial and/or initiate an evidentiary hearing, to determine facts not in evidence and expand Mr. Almanza's assertion. Appoint counsel who is fluent in spanish or has access to interpreter in order to assist Mr. Almanza.

or any other relief to which Petitioner may be entitled. (Money damages are not available in habeas corpus cases.)

I declare under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on 09-30th _____ (month, day, year).

FERNANDO SALMAN ZA
**Signature of Petitioner**

_____                    _____
ignature of attorney, if any                               Date

Exhibit I

Opening brief - Appellant

13

2CA-CR 2014-0034

Pinal Co. CR 2011-03026

COURT OF APPEALS

DIVISION TWO

STATE OF ARIZONA

STATE OF ARIZONA,                          )
        Plaintiff-Appellee,            )
                            )
v.                                        )
FERNANDO ALMANZA,                          )
        Defendant-Appellant.           )

ON APPEAL FROM THE JUDGMENT OF
THE PINAL COUNTY SUPERIOR COURT
HONORABLE BOYD T. JOHNSON
Pinal County Superior Court Judge

**OPENING BRIEF**

Lynn T. Hamilton, #004047
240 N. Center St.
Mesa, AZ 85201
(480) 545-5511
Lynn.Hamilton@azbar.org

## Statement of Case

¶1    The pertinent facts relating to the progress of the case include:

| DATE | EVENTS |
|---|---|
| 10/22/11 | Date of event of alleged child molestation |
| 10/23/11 | Arrest and interrogation |
| | Indictment |
| | Client interviewed at police headquarters |
| 09/30/13 – 10/07/13 | Trial |
| 01/10/14 | Appellant was sentenced to life without release or no less than 35 years with 771 days back-time credit |
| 01/14/14 | Notice of Appeal |

## Table of Contents

Page

Table of Cases .................................................... 3
Statement of Case ............................................ 6
Statement of Facts ........................................... 7

Issues:

I.    DID THE COURT ERR IN DETERMINING
      APPELLANT'S STATEMENTS WERE VOLUNTARY?    8
         A. Custody ..............................    12
         B. Inaccurate Miranda Warnings .............    13
         C. Unqualified Interpreter ......................    14
         D. Statements Involuntary ......................    16

II.   WAS IT FUNDAMENTAL ERROR TO ADMIT TO
      RULE 404(b) PRIOR BAD ACTS EVIDENCE?    19
         A. Rule 404(b) ...............................    21
         B. Rule 404(c) ...............................    22
         C. Not Harmless Error .........................    24
         D. Limiting Instruction ........................    26

III.  DID THE COURT ERR IN FAILING TO GRANT A
      DIRECTED VERDICT OF ACQUITTAL FOR
      INSUFFICIENT EVIDENCE? .....................    28

IV.   WERE APPELLANT'S FIFTH AND SIXTH
      AMENDMENT RIGHTS VIOLATED WHEN A
      JAILHOUSE SNITCH OBTAINED INCRIMINATING
      STATEMENTS FROM APPELLANT? ...........    31

Conclusion .......................................................    37
Certificate of Service ........................................    38
Certificate of Compliance ..................................    39

Table of Cases and Authorities

**Cases**:

Arizona v Fulminante, 499 U.S. 279 (1991)

Chapman v California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)

Edwards v Ariz., 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)

Florida v Powell, 559 U.S. 50, 130 S.Ct. 175 L.Ed.2d 1009 (2010)

Kuhlman v Wilson, 477 U.S. 436, 106 S.Ct. 2616, 91 L.E.2d 364 (1986)

Stansbury v California, 511 U.S. 318 (1994)

Dickerson v U.S., 530 U.S. 428, 435 (2000)

Lovely v U.S., 169 F.2d 386 (4th Cir. 1948)

Massiah v U.S., 377 U.S. 201,      S.Ct. L.Ed. (1964)

Miranda, 384 U.S. 436, 86, S.Ct. 1602, 16 L.Ed.2d 694 (1966)

St. v Aguilar, 209 Ariz. 40, 97 P.3d 865 (2004)

St. v Anthony, 218 Ariz. 439, 189 P.3d 366 (2008)

St. v Bible, 175 Ariz. 549, 858 P.2d 1152 (1993)

St. v Carlisle, 198 Ariz. 203, 8 P.3d 391 (App. I 2000)

U.S. v Crawford, 372 F.3d 1048 (9th Cir. 2004)

St. v Davolt, 207 Ariz. 191, 84 P.3rd 456 (2004)

St. v Ferrero, 229 Ariz. 239, 274 P.3d 509 (2012)

St. v Garcia, 200 Ariz. 471, 28 P.3d 327 (2002)

St. v Glassel, 211 Ariz. 33, 116 P.3d 1193 (2005)

St. v Hensley, 137 Ariz. 80, 669 P.2d 598 (1983)

U.S. v Hernandez, 896 F.2d 513 (11th Cir. 1990)

St. v Hicks, 133 Ariz. 64, 649 P.2d 267 (1982)

St. v Hyde, 186 Ariz. 252, 921 P.2d 655 (App. 1996)

St. v Kemp, 185 Ariz. 52, 912 P.2d 1281 (1996)

U.S. v Kim, 292 F.3d 969 (9th Cir. 2002)

U.S. Arambula-Ruiz, 987 F.2d 599 (9th Cir. 1993)

St. v McFarlin,            517 P.2d 87 (Ariz. 1973)

U.S. v Merhmanesh, 689 F.2d 822 (9th Cir. 1982)

U.S. v Rivera, 900 F.2d 1412 (10th Cir. 1990)

U.S. v Santa Cruz, 48 F.3d 1118 (9th Cir. 1995)

St. v Smith, 107 Ariz. 100, 482 P.2d 863 (1971)

U.S. v Spillone, 879 F.2d 514 (9th Cir. 1989) cert. denied.
  498 U.S. 864, 111 S.Ct. 1783, 112 L.Ed.2d 137 (1990)

St. v Stayhand, 184 Ariz. 571, 911 P.2d 577 (App. 1995)

St. v Sullivan, 187 Ariz. 599, 931 P.2d 1109 (App. II 1996)

St. v Treadway,            568 P.2d 1061 1977)

St. v Vega, 228 Ariz. 24, 262 P.3d 629 (2011)

U.S. v Vizcarra-Martinez, 66 F.3rd 1006 (9th Cir. 1995)

4

U.S. v Vo, 413 F.3rd 1010 (9th Cir. 2005)

U.S. v Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967)

## Statement of Facts

¶2    Ada, the four-year-old, related she lived with her mom and brother

Jack at a pig ranch (R.T. 10-2-13 at 106).  Fernando was a ranch hand

who sometimes helped Ada and Jack feed the pigs.  On October 22, 2011,

Ada was feeding the pigs and she sat on Fernando's lap.  She recalled he

pulled her dress up and put his finger in her private parts (R.T. 10-2-13 at

104-108).

¶3    Ada went to her mom who was butchering a pig and said "Fernando

has really sharp nails" (R.T. 10-2-13 at 147).  Ada pointed and said he

touched me down there.  Mother, Katie, called the police.

¶4    Later, Mother, Ada and police went for a medical exam at Tucson

Medical Center (Id at 150).

¶5    Nurse Hess and Dr. Klein testified that at the forensic evaluation, Ada

had an abrasion .37 cm on the posterior labia (R.T. 10-7-13 at 27).  The

child had a little blood on her underwear (Id at 41).

# I.

## DID THE COURT ERR IN DETERMINING THE ACCUSED'S STATEMENTS WHILE IN CUSTODY WERE FREE AND VOLUNTARY? DID THE COURT ERR IN ADMITTING THOSE STATEMENTS?

### Standard of Review

¶6    The trial court's findings of fact are reviewed for abuse of discretion.

The legal question of whether evidence was obtained in violation of the

Constitution is reviewed *de novo*. St. v Davolt, 207 Ariz. 191, 84 P.3rd 456

(2004).

### Factual Background

¶7    On October 23, 2011, Appellant was picked up by Pinal County

Sheriff's Office and brought in for questioning by Detective Snyder.  Officer

Snyder recalled Miranda warnings were given in Spanish and English (R.T.

9-30-13 at 58).  The appellant could speak some English (id at 54).

Detective Snyder asked Sgt. Vargas, who was characterized by Officer

Snyder as a native speaker of Spanish, to assist in the interrogation (Id at

67).

¶8    Officer Sanchez and Officer Vargas attended the interview with

Officer Snyder (R.T. 9-30-13 at 66-67).  Officer Synder reported that

although the transcript of the interview said it was Officer Sanchez who

8

translated, that it was really Officer Vargas:

    Q.    So you understand your right and you want to answer the
           questions?
    A.    No.
    Q.    You don't want to answer questions, sir?
    A.    Yes, I want to answer but okay, okay.  Go ahead and say what
           it is you want to know.
           (R.T. 9-30-13 at 75 and Exhibit 116)

¶9    It was not disputed that Appellant speaks a little English, is illiterate

in both Spanish and English and struggles with the English speaking (R.T.

9-30-13 at 76).

¶10   On September 14, 2012, defense counsel filed a motion to suppress

statements challenging a general lack of voluntariness and inadequate

unintelligible Spanish interrogation.  On October 17, 2012, the State in its

9th Notice of Disclosure, provided a Spanish transcript of the interview.

¶11   A Pretral Suppression Hearing was conducted.  Judge Johnson ruled

that in this siituation, Appellant was detained for investigation at the police

station.  Judge Johnson noted the accused was in a holding cell at PCSO.

The Judge felt the accused's English was pretty good and that he gave

appropriate answers and denied the motion to suppress (Id at 77-83).

¶12   Deputy County Attorney Long submitted as an attachment to the

motion of disclosure, a complete transcript of the police interview of

Appellant in English transcribed by Courtreporter Gatewood (6-7-12).

Later, the prosecutor submitted another transcript of the same police

interview with the addition of 22 pages of Spanish interpretation.  A second

page of transcript is placed next to the English page and purports to be a

Spanish transcription and Spanish translation.  This interpaginated

transcript composes Exhibit 116.  It is unknown who transcribed the

Spanish.  It is unknown who translated the Spanish in Exhibit 116.

¶13  On the English page of the interview, if a policeman speaks to

Appellant it reads:

> Detective Sanchez: in Spanish
>
> Mr. Almanza: in Spanish

> (R.T. Exh 116 at 15)

>     -OR-

> Detective Snyder: . . . Do you understand each of these rights
> as I've just read them to you? (in Spanish discussion).
>
> Detective Sanchez: I just read him his Miranda in Spanish and
> he stated he understood.
>
> Detective Snyder: Okay knowing that, do you want to answer
> my questions?
>
> Mr. Almanza: (indiscernable)
>
> Detective Sanchez: He's stating that ---

Mr. Almanza: (indiscernable)

Detective Snyder: I – what – I'm sorry, what was your question?

Mr. Almanza:  Why – why you say I (indiscernable)?  I don't do nothing.

Detective Snyder:  We're not saying that you need a lawyer. We're saying you have the right to have one if you want one./ We're not saying that you have to have one.  We're just saying that if you want…

Mr. Almanza:  Well, I aint got money

Detective Snyder:  Okay.  Well, and if you can't afford one, then the Court can appoint one at a – at a later time

(R.T. Exh. 116 at 18-19)

¶14   Judge Johnson determined there was no arrest, merely investigation. Judge Johnson ruled Miranda warnings were properly given (R.T. 9-30-13 at 80-83).  Judge Johnson determined Appellant waived his Miranda rights and wanted to talk to police.  The judge decided Appellant's English was good enough (Id).

**Issue**

¶15   Was Appellant in custody?  Was Appellant properly advised of Miranda rights?  Did Appellant knowingly, intelligently and voluntarily waive his rights?

11

Argument

¶16   There are numerous deficiencies present which render the accused's statements involuntary and inadmissible:

    1.    The appellant was in police custody;

    2.    Miranda warnings given inaccurately;

    3.    The Spanish interpreter was unqualified;

    4.    Statements Involuntary.

A.    Custody

¶17   A person is in police custody if from the totality of circumstances a reasonable person would conclude his freedom of movement was restrained. Stansbury v California, 511 U.S. 318 (1994); U.S. v Crawford, 372 F.3d 1048 (9th Cir. 2004); U.S. v Kim, 292 F.3d 969 (9th Cir. 2002).

¶18   When these criteria are utilized, it is clear Appellant was not merely a person of interest, potential witness, etc., but rather in custody.

¶19   The appellant was in custody at the time of the police interview.  He was cuffed and transported by police to Pinal County Sheriff's Office detention facility.  He was confronted with Ada's accusations.  He was not free to leave.  He was not told he was free to leave. (R.T. 9-30-14 at 59-62).

B.   Inaccurate Miranda Warnings

¶20   Miranda is violated when a suspect is in custody and interrogated without receiving his Miranda warnings or without knowingly, intelligently and voluntarily waiving the rights described in those warnings. Dickerson v U.S., 530 U.S. 428, 435 (2000), quoting Miranda, 384 U.S. 436, 86, S.Ct. 1602, 16 L.Ed.2d 694 (1966); Florida v Powell, 559 U.S. 50, 130 S.Ct. 175 L.Ed.2d 1009 (2010).

¶21   The Miranda warnings includes:

> You have the right to remain silent.  Anything you say can and will be used against you in a Court of law.  You have the right to have an attorney assist you.  If you cannot afford an attorney, an attorney will be appointed to assist you free of cost.  Do you understand these rights?  Do you wish to give up these rights and speak to us?

¶22   If a suspect makes a statement during custodial interrogation, the burden is on the State to prove as a prerequisite to admissibility that the defendant knowingly, intelligently and voluntarily waived his Fifth and Sixth Amendment rights.

¶23   The police incorrectly advised Appellant as to his Fifth and Sixth

13

Amendment rights.

¶24   First, it appears the police never told Almanza an attorney would be free.  Second, the police never told him the attorney would be present now or during questioning as opposed to off in the future sometime.  When Appellant responded about the attorney, he was misinformed the Court could appoint an attorney **later** (Id at 18-19 supra).

¶25   The State bears the never shifting burden of proof to establish that statements of a detained arrestee were freely and voluntarily made.  This requires someone such as police to advise an accused of the standard Miranda warnings or establish the person had knowledge of Miranda rights from another source.

¶26   When the State created the first transcript of the police interview of Appellant, anything spoken in Spanish was omitted.  The State did not obtain a translation of Spanish to English until later.  When one examines the interlineated Spanish translation of the interview, the same errors and omissions of Miranda warnings are found.

C.   Unqualified Interpreter

¶27   Firstly, although Detective Sanchez stated Appellant understood his Miranda warnings that does not appear true (Id at 18-19).  The appellant

14

place in the case *sub judice*.

¶31   The police should not interpret because they are not neutral.  Police

have a particular bias as to the outcome.  Police have not been tested for

language proficiency.  Police are not trained to retain and record all key

words and phrases in a lengthy question or lengthy response.  The higher

the risk or impact the greater the importance of high standards of

competency

D.   <u>Statements Involuntary</u>

¶32   Defendant's colloquy was:

> Q.   So you understand your right and you want to
>       answer questions?
> A.   No
> Q.   You don't want to answer questions, Sir?
> A.   Yes, I want to answer but... Okay, okay, go
>       ahead and say what it is you want to know.
>
> (R.T. 9-30-13 at 75 and Exh. 116)

¶33   "No" is as simple and clear as an illiterate Spanish speaker can get.

"No" is not ambiguous.  "No" should have ended the interrogation.

¶34   In this matter, the detectives did not honor Almanza's invocation of

right to remain silent.

¶35   Under Miranda, a person in custody must be advised of his right to

16

was definitely confused in two languages.

¶28   Neither Officer Vargas nor Officer Sanchez was never qualified as a

person capable of doing a Spanish translation of legal terms or everyday

words:

> Detective Snyder:  Okay, I'll tell you what.  Hang on a minute.
> Let me see if we can get the sergeant over here that speaks a
> little bit of Spanish.  Maybe he can help out.  Okay?
>
> Mr. Almanza: (indiscernable)
>
> (Exh. 116 at 5)

¶29   It is impossible for anyone to evaluate Officer Vargas / Sanchez's

proficiency.  It requires a much higher level fo skill to have a good

command of legal terminology in Spanish.  To merely assume that anyone

with a Mexican last name can interpret is bigotry.

¶30   In a legal context, professional language assistance means accuracy

is paramount along with a duty to remain impartial.  Bilingual police staff

without prior training should not be expected to function as interpreters.  To

interpret in a criminal law setting, the interpreter must know words, terms

and jargon of police procedure, legal system, street slang and idioms.

There is a difference between an officer in an emergency endeavoring to

communicate in Spanish and a formal scheduled interview such as took

remain silent and right to free legal assistance. <u>Miranda v Ariz</u>., 384 U.S.
436 (1966).  Thereafter, if the person indicates in any manner prior or
during questioning that he wishes to remain silent, the interrogation must
cease (Id at 384 U.S. 473-474).  No specific language is required as long
as it is clear enough for a reasonable person to understand. <u>St. v</u>
<u>Stayhand</u>, 184 Ariz. 571, 911 P.2d 577 (App. 1995).

¶36   It is important to note that inquiries between an accused and state
agents regarding routine incidents in a custodial relationship will not be
deemed to initiate a conversation in the sense of <u>Edwards v Ariz</u>., 451 U.S.
477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); <u>St. v Kemp</u>, 185 Ariz. 52, 912
P.2d 1281 (1996).

¶37   Almanza did respond to the detective's provocative lying statements
that there was DNA evidence against him.  These were statements
calculated to persuade Almanza to change his mind about ending the
interrogation. <u>St. v Hicks</u>, 133 Ariz. 64, 649 P.2d 267 (1982).

¶38   This evidence affected the verdict in this case.  These incriminating
statements lent considerable strength to the recollections of a 4-year-old
victim.  A confession is the most probative and damaging of evidence and
may attempt a jury to rely on that alone in reaching a decision. <u>Arizona v</u>

Fulminante, 499 U.S. 279 (1991).  Even though the state may assert there was other significant evidence, it cannot be said Almanza's incriminating statements, "had no influence" on the jury. St. v Bible, 175 Ariz. 549, 858 P.2d 1152 (1993).

¶39   In conclusion, Appellant submits police did not scrupulously honor his right to silence or right to counsel.  Appellant submits the Honorable Johnson erred as to the underlying facts and conclusions of voluntariness which are unsupported by law. St. v Hensley, 137 Ariz. 80, 669 P.2d 598 (1983).

## II.

## WAS IT FUNDAMENTAL ERROR TO ADMIT RULE 404(b) PRIOR BAD ACTS EVIDENCE?

### Standard of Review

¶40   The appellate court reviews the admission of uncharged sex acts for abuse of discretion. St. v Aguilar, 209 Ariz. 40, 97 P.3d 865 (2004).

### Factual Background

¶41   There was no pretrial Rule 404(b) motion in limine by the State regarding bad acts evidence of the accused.  There was no oral motion regarding bad acts evidence of the appellant.

¶42   Defense counsel inquired of Ada's mother:

Q.   Do you ever remember punching Fernando in the face?

A.   Yes, I do.

Q.   Can you tell me about that?

A.   He behaved inappropriate with me and I turned around instinctively and I punched him.

(R.T. 10-01-13 at 171)

¶43   On redirect, the prosecutor followed up about what led to the punch. The mother, Ms. Q., testified Appellant pressed up against her while they

19

were at work and she punched him, (Id at 176). Mother testified on

another day at work, she was grabbed and groped by Appellant. Mother

screamed (Id at 177). One time, early in the morning, he just came inside

her house at the ranch. Mother said, "Why are you in my house and he

said he wanted to come wake me up" (Id at 178). Mother said Appellant

was also a peeping Tom (Id at 178).

¶44   Defense counsel did not object to the prior bad acts evidence.

## Issue

¶45   Was it error to allow bad acts evidence without disclosure or a 404(b)

hearing? Was evidence of other bad sex acts involving Mother unduly

prejudicial and plain error?

## Argument

¶46   Theoretically, the prior bad acts evidence could have been utilized by

the State under two exceptions. The first is Rule 404(b) to show common

scheme, plan, ID, etc. The second is Rule 404(c) sexual propensity.

¶47   In a nutshell, the question is whether prior bad acts of groping or

being a Peeping Tom of an adult woman (Mrs. Q) was relevant under any

theory at all as to a molestation of a 4-year-old girl.

## A.    Rule 404(b)

¶48   Rule 404(b), Other Crimes, Wrongs and Acts states:

> Evidence of other crimes, wrongs or acts is not
> admissible to prove the character of a person in
> order to show action in conformity therewith.  It
> may, however be admissible for other purposes,
> such as . . . intent . . . plan, knowledge or absence
> of mistake . . .

¶49   There is a four-part test for admissibility of a prior bad act. U.S. v Vo,

413 F.3rd 1010 (9th Cir. 2005); U.S. v Merhmanesh, 689 F.2d 822 (9th Cir.

1982); U.S. v Vizcarra-Martinez, 66 F.3rd 1006 (9th Cir. 1995)

   1.    Proximity in time

   2.    Data sufficient to conclude accused did commit the former

      criminal misconduct

   3.    Intent and knowledge in former case similar to intent and

      knowledge charged offense

   4.    Probative value outweighs prejudice

¶50   If the bad acts evidence was utilized for a nonpropensity purpose

such as motive, intent, identity, etc., as long as the Court determines

probative value outweighs potential prejudice and the bad acts are

relevant, an appropriate cautionary instruction must be given..

21

¶51   In the matter at bar, the State did not provide notice of prior bad acts as required by Rule 15.1.  The State failed to advise the Court of likely use of prior bad acts n order to obtain a ruling on relevancy of the prior bad act. There was no judicial weighing of the probative value of the prior bad acts. There was no limiting instruction.

**B.    Rule 404(c)**

¶52   Rule 404(c) allows propensity evidence in a case of sexual misconduct.  Evidence of bad acts must be screened prior to admissibility as propensity evidence. <u>St. v Ferrero</u>, 229 Ariz. 239, 274 P.3d 509 (2012). The trial court must determine specifically:

1.    The accused committed the bad acts;

2.    The bad acts provided a reasonable inference of a sexual propensity;

3.    Probative value outweighed prejudice;

4.    The jury was instructed on the proper use of evidence.

<u>St. v Aguilar</u>, 209 Ariz. 340, 97 P.3d 865 (2004).

¶53   The Arizona appellate courts have struggled with the admissibility of sexual propensity evidence for a long time.  In <u>St. v McFarlin</u>, 110 Ariz. 225, 517 P.2d 87 (Ariz. 1973), the Arizona Supreme Court recognized in

addition to the usual 404(b) exceptions, an exception of emotional

propensity for sexual aberration.  The court limited this type of evidence to

cases involving abnormal sex acts if the bad acts were similar in nature to

the charged crime and close in time.  In McFarlin, there was heterosexual

sex misconduct and consent was the defense.  There, the Court

determined the emotional propensity exception did not apply (The Arizona

Supreme Court relied on Lovely v U.S., 169 F.2d 386 (4th Cir. 1948).

¶54   In St. v Treadway, 116 Ariz. 163, 568 P.2d 1061 1977), the Arizona

Supreme Court held if the bad acts are dissimilar or remote then it is

necessary an expert provide evidence of relevance of those dissimilar or

remote bad acts.  Subsequently, Rule 404(c) was adopted which abolished

the expert testimony requirement.

¶55   In St. v Aguilar, 209 Ariz. 340, 97 P.3d 865 (2004), the Arizona

Supreme Court held under the plain language of Rule 404(c) the types of

sex offenses for which other bad acts evidence may be admitted are no

longer restricted to those listed in McFarlin.  Now, the question is whether

other bad acts evidence leads to a reasonable inference the defendant had

a character trait which gives rise to a aberrant sexual propensity to commit

the charged sexual offense.  The prior bad acts themselves need not be

23

aberrant or abnormal as long as those bad acts lead to the conclusion the defendant has an aberrant propensity to commit a certain sex offense. There must be evidence upon which the trial court could make that finding. The Arizona Supreme Court has clarified as long as other requirements that sex propensity evidence may be allowed.

## C.   Not Harmless Error

¶56   If the Court determines it was error for the Honorable Johnson to admit the prior bad acts, Appellant also urges this error cannot be characterized as mere harmless error.

¶57   A non-constitutional error is harmless unless it had a substantial influence on the jury verdict or leaves a reasonable person in grave doubt as to the impact of the error. U.S. v Rivera, 900 F.2d 1412 (10th Cir. 1990).

¶58   Harmless error is the admission of evidence which beyond a reasonable doubt did not contribute to the verdict. Chapman v California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); St. v Garcia, 200 Ariz. 471, 28 P.3d 327 (2002).  Error could be harmless if there was substantial evidence in the record fulfilling the admissibility requirements. St. v Vega, 228 Ariz. 24, 262 P.3d 629 (2011).  In the case *sub judice*, the record is devoid of data which could have satisfied Rule 404(c) requirements.  There

24