was no evidence as to timing of each bad act, similarity of bad act to molest of a 4-year-old and bad acts (groping or being a peeping Tom of an adult female) led to reasonable inference of particular sexual propensity (molestation of young female).

¶59  In the case of St. v Garcia, the Court erred in admitting evidence of prior bad acts without making the required Rule 404(c) findings.  There, the Supreme Court held it was not possible to characterize the admission of prior bad acts where the trial court omitted to screen the other acts evidence.  Lastly, in Garcia, the Court decided this bas acts information did not affect the verdicts on some counts but did as to other counts.  The affected charges were reversed.

¶60  The omission of prior bad acts data should be reviewed for fundamental error because defense counsel failed to object.  The State bears the burden of showing error was harmless. St. v Anthony, 218 Ariz. 439, 189 P.3d 366 (2008).  Appellant submits there is no way the prior bad acts can be characterized as harmless under any theory.

¶61  There was a lack of substantial evidence of Appellant's act of child molestation:

1.    There were no law enforcement observations or observations of ranch hands and others;

2.    There was no physical evidence linking Appellant to the charged crime.  For example, there was no DNA.

¶62   The State sought to utilize the prior bad act evidence as a make-weight because the State recognized how unbelievable the 4-year-old victim appeared.

¶63   The weakness of the facts in the charged offense is in proportionate relationship to the State's need for 404(b) evidence to prop up their charges.  The likelihood of prejudice by use of 404(b) evidence rises with weaker and weaker facts of the State's case.

¶64   One cannot characterize the Honorable Johnson's decision to admit prior bad acts material as harmless because the evidence of Appellant's guilty participation in the charged offense was so slight.

D.    **Limiting Instruction**

¶65   Appellant submits a limiting instruction was insufficient to limit prejudicial impact because there was no abundance of evidence linking Mr. White to the charged offense. U.S. v Santa Cruz, 48 F.3d 1118 (9th Cir. 1995); U.S. Arambula-Ruiz, 987 F.2d 599 (9th Cir. 1993).  Appellant

submits that the evidence of acts with Ms. Q was a make-weight to bolster the State's weak case.

## Conclusion

¶66   The trial court's failure to exercise its discretion to rule on admissibility of evidence is an abuse of discretion. <u>St v Garcia</u>, 192 Ariz. 171, 962 P.2d 898 (1998).  The rules of procedure require specific findings pursuant to Rule 403 and 404.

¶67   The use of a prior bad acts of sexual conduct with an adult was particularly prejudicial in the case of Appellant who was accused of molestation of a child whose competency and recollection were bolstered by Ms. Q's testimony.

## III.

## DID THE COURT ERR IN FAILING TO GRANT A MOTION FOR DIRECTED VERDICT?

### Standard of Review

¶68    The Court views the evidence in the light most favorable to supporting the verdict and will reverse only if there is a lack of substantial evidence to support a conviction. St. v Sullivan, 187 Ariz. 599, 931 P.2d 1109 (App. II 1996).

### Factual Background

¶69    At the conclusion of the State's case, defense counsel made a Rule 20 motion which was denied (R.T. 10-2-13 at 59).

### Issue

¶70    Did the Court err in failing to grant a timely Rule 20 motion for directed verdict? (R.T. 10-2-13 at 59).

### Argument

¶71    Appellant submits the State failed to prove all elements of child molestation.  Appellant submits he never knowingly touched Ada's privates.  Appellant in the police interview conceded that as he held the girl he didn't think his fingers slipped but they might have (R.T. 10-2-13 at 95).

Appellant did not recall any blood from the child (Id).

¶72   Appellant submits it is as reasonable to believe him as to leap to the hasty conclusion of molestation.

¶73   In this matter, there are key factors which carry significant weight and indicate a Rule 20 motion should have been granted.

¶74   Firstly, Ada was age 4 at the time of the event and age 6 at trial.  Her understanding of improper touches and ability to express herself was limited.  The child focused on the fact Appellant had sharp fingernails which hurt (R.T. 10-2-13 at 147 and 10-3-13 at 16).  Interestingly, Ada apparently embellished and reported to Dr. Klein that Fernando put his fingers in her and **hit her in the back with a shovel** (R.T. 10-2-13 at 220).  There was no evidence of a injury from a shovel hitting Ada and one would expect to observe something as a result of such a blow.  One must inquire what was imagined or embellished by Ada and what was not.

¶75   Secondly, Dr. Klein, the pediatrician who examined Ada, testified as to locating a .37 mm abrasion in the posterior labia region and some blood on panties (R.T. 10-7-13 at 27; 41; R.T. 10-2-13 at 217).  Dr. Klein agreed the small abrasion could have been caused by something else (R.T. 10-2-13 at 237).  This was an external, not vaginal, abrasion (R.T. 10-3-13 at

88).

¶76   Dr. Klein's examination and Ada's recollection are consistent with an accidental touching.

¶77   Appellant submits reasonable persons would not differ as to whether the evidence of misconduct established a child molestation. St v Davolt, 207 Ariz. 191, 84 P.3d 456 (2004).  The child's testimony along with evidence from experts does not rise to the level of establishing *mens rea*. The State's evidence is best characterized as a mere scintilla. St. v Carlisle, 198 Ariz. 203, 8 P.3d 391 (App. I 2000).

¶78   For all of the foregoing reasons, Appellant submits the Honorable Johnson erred in failing to grant a directed verdict.

## IV.

**WAS APPELLANT'S SIXTH AMENDMENT RIGHT TO COUNSEL AND FIFTH AMENDMENT RIGHT NOT TO INCRIMINATE HIMSELF VIOLATED WHEN INCRIMINATING STATEMENTS WERE ELICITED BY A GOVERNMENT AGENT AFTER INDICTMENT WHILE IN CUSTODY? SHOULD THE STATEMENT OF BOGGS HAVE BEEN SUPPRESSED?**

### Standard of Review

¶79   Issues of violation of Sixth Amendment right to counsel are reviewed *de novo*. St. v Glassel, 211 Ariz. 33, 116 P.3d 1193 (2005).  A suppression ruling is based on facts available at the hearing which will not be set aside unless there is clear error. St. v Hyde, 186 Ariz. 252, 921 P.2d 655 (App. 1996).

### Factual Background

¶80   The exact chronology of events is follows:

   1.      Boggs, a jail inmate, met Appellant while they were inmates at the Pinal County Jail (R.T. 10-2-13 at 194).  Boggs stated he is fluent in Spanish (Id at 195) and could communicate with Appellant, a Spanish speaker.

   2.      The defendant told Boggs he did not understand his charges.

   3.      Boggs consulted with Detective Rushing about Appellant (Id at 194-195).

4. Appellant told Boggs about the Ada encounter (Id at 197).

5. Boggs was conscience stricken and reported the incriminating evidence to Detective Rushing and then to Detective Snyder (Id at 198-199).

¶81 Per the State's Rule 609 disclosure of June 18, 2012, Boggs had thirteen (13) priors of which several were available time-wise for impeachment or sentence enhancement:

- 2/2/87      Aggravated Assault;

- 6/12/01     Aggravated Assault;

- 12/5/03     Traffic in Stolen Property; and

- 12/23/04    Possession of Drug Paraphernalia

¶82 Boggs related he had open cases, a Class 4, Class 5 and Class 6 (Id at 201). Boggs obtained a plea offer to one Class 6 from the State for 1.5 years DOC of which he served 4 months (R.T. 10-2-13 at 192 and 202).

¶83 Boggs said the favorable plea offer came before the spoke to Detective Snyder. There was no testimony about Boggs career as a police informant. There was no testimony regarding if the plea offer was raised at all or discussed with Detective Rushing prior to the meeting with Detective Snyder.

¶84   Boggs was interviewed prior to trial. The transcription of the interview was never placed in evidence[1] (It was Exhibit 114). Boggs' testimony was discussed in a pretrial hearing. Trial counsel for Appellant made no <u>Massiah v U.S.</u> objection or any objection.

## Issue

¶85   Was Appellant denied his Fifth and Sixth Amendment rights to remain silent and right to counsel? Was Boggs an agent of the State acting improperly to obtain a confession or incriminating evidence?

## Argument

¶86   It is a well recognized principle that it is a violation of Fifth and Sixth Amendment rights for the Government to conduct surreptitious interrogations of an accused in the jailhouse. <u>Massiah v U.S.</u>, 377 U.S. 201, S.Ct. L.Ed. (1964). Any secret interrogations contravenes basic concepts of fairness in a criminal case and is a derogation of due process rights. A sneaky police interrogation is the same as a direct interrogation. <u>Kuhlman v Wilson</u>, 477 U.S. 436, 106 S.Ct. 2616, 91 L.E.2d 364 (1986).

---

[1] On June 12, 2012, in a Motion for Disclosure, former trial attorney Huggins specifically requested particulars surrounding the police deal with the C.I. These questions included known bias of the C.I., all documents of negotiations of the C.I. plea, any proffer of testimony by the C.I., any prior contrary statements of C.I., any other investigations (past or present) in which Boggs was a C.I., the duration of C.I.'s relationship to any law enforcement. These topics were not addressed by second trial counsel, Mr. Green, in the pretrial hearing of Boggs.

¶87 In order for there to be a <u>Massiah</u> violation, the following must exist:

   1. The State must actively enter the picture or direct or assist the jailhouse snitch with eliciting guilty statements from an inmate;

   2. The jailhouse informant must have more than simply a mere hope of leniency or benefit by his helpfulness.

   <u>St. v Smith</u>, 107 Ariz. 100, 482 P.2d 863 (1971).

¶88 The doctrine of the fruits of the poisonous tree precludes the use of fruits of an improper interrogation and violation of Sixth Amendment right to counsel. <u>U.S. v Wade</u>, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

¶89 A leading case on this topic is <u>St. v Smith</u>, *supra*. Smith and Mr. Mahan had ajoining cells. The County Attorney told Mahan, the jailhouse snitch, "I can't tell you to gather information." Mr. Mahan did then gather incriminating data. There, the Arizona Supreme Court held that the County Attorney "made no oral commitments to Mr. Mahan is correct, this Court does not live in NeverNever land of Peter Pan" (<u>Smith</u>, *supra*, 107 Ariz. at 109).

¶90 Additionally, the Arizona Supreme Court ridiculed the idea that Mahan delivered notes only because "it was the right thing to do" and

found this representation somewhat hollow. <u>Smith</u>, *supra* 107 at 110.

¶91   Kuhlman v Wilson, 477 U.S. 436, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986) held that a defendant must demonstrate that the police and their informant took some action beyond mere listening designed to elicit incriminating remarks.

¶92   Normally, one wouldn't think of a jail inmate calling a police detective on his cellmate's case for a social chat.  One need not be sophisticated to recognize that Boggs, a career criminal, was not conscience stricken trying to do the right thing but was snitching on Almanza for benefit.  It is important to note Boggs met several times with police.  There was not just a hope of leniency by Boggs.  Boggs delivered the goods and got a sweetheart deal in return.  Just as the Arizona Supreme Court observed <u>St. v Smith</u>, although oral commitments technically weren't made to Boggs, the Court of Appeals does not live in Nevernever Land.

¶93   The admission of the incriminating statements made to Boggs was not mere harmless error.  Harmless error is error which did not reasonably contribute to the verdict. <u>St. v Henderson</u>, 210 Ariz. 561, 115 P.2d 601 (2005).  The incriminating statements by no means was merely cumulative or *de minimis*.  In this case, during the police house interrogation, the

accused did not confess. He agreed he hugged Ada and touched her

(R.T. 10-2-13 at 89-94). The appellant never confessed or made

incriminating statements comparable to what Boggs reported to Detective

Rushing. During trial, Ada testified as well as her mother and medical staff

about statements Ada made to them. None of these people confronted

Appellant or obtained incriminating evidence in that manner.

## Conclusion

¶94   For all of the foregoing reasons, Appellant requests his case be reversed and remanded with instructions.

RESPECTFULLY SUBMITTED this 1st day of May, 2014.

HAMILTON LAW OFFICE

_____*/s/ Lynn T. Hamilton*_____
Lynn T. Hamilton
240 N. Center St.
Mesa, Arizona 85201
*Attorney for Appellant*

## CERTIFICATE OF SERVICE

I, Lynn T. Hamilton, affirm I have e-filed this Opening Brief this 1st

day of May, 2014 with the Arizona Court of Appeals - Division Two.


I have e-mailed copies of this Opening Brief this 1st day of May,

2014 to the following:

Joseph Maziarz, Esq.
ATTORNEY GENERAL'S OFFICE

I have mailed copies of this Opening Brief this 1st day of May,

2014 to the following:

Fernando Almanza-Segoviano, ADC # 140967
ASPC – EYMAN
SMU I Unit
P.O. Box 4000
Florence, AZ 85132

HAMILTON LAW OFFICE


*/s/ Lynn T. Hamilton*
Lynn T. Hamilton
240 N. Center St.
Mesa, Arizona 85201
*Attorney for Appellant*

# Exhibit II

Decision of Ariz. Court of Appeals Div. II

IN THE
# ARIZONA COURT OF APPEALS
DIVISION TWO

--------

THE STATE OF ARIZONA,
*Appellee,*

*v.*

FERNANDO SEGOVIANO ALMANZA,
*Appellant.*

No. 2 CA-CR 2014-0034
Filed August 29, 2014

--------

THIS DECISION DOES NOT CREATE LEGAL PRECEDENT AND
MAY NOT BE CITED EXCEPT AS AUTHORIZED BY APPLICABLE RULES.
NOT FOR PUBLICATION
*See* Ariz. R. Sup. Ct. 111(c); Ariz. R. Crim. P. 31.24.

--------

Appeal from the Superior Court in Pinal County
No. CR201103026
The Honorable Boyd T. Johnson, Judge

**AFFIRMED**

--------

COUNSEL

Thomas C. Horne, Arizona Attorney General
Joseph T. Maziarz, Section Chief Counsel, Phoenix
By Alan L. Amann, Assistant Attorney General, Phoenix
*Counsel for Appellee*

Lynn T. Hamilton, Mesa
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

---

Presiding Judge Kelly authored the decision of the Court, in which Judge Howard and Judge Vásquez concurred.

---

K E L L Y, Presiding Judge:

¶1    Following a jury trial, Fernando Almanza was convicted of sexual conduct with a minor under the age of twelve. The trial court sentenced him to life imprisonment with no possibility of release for thirty-five years. On appeal, he argues his conviction should be reversed because the court erred in making various evidentiary rulings and in denying his motion for judgment of acquittal. We affirm Almanza's conviction and sentence.

## Factual and Procedural Background

¶2    Almanza worked as a ranch hand in Dudleyville, Arizona. K.Q. worked at the same ranch as Almanza and lived there with her three minor children, including A.W. In October 2011, A.W., who was then four years old, told K.Q. that Almanza had "touched [her] down there." When K.Q. asked A.W. what she meant, A.W. pulled down her underwear, put her finger slightly inside her genital area, and pulled it out. K.Q. called 9-1-1 and then drove to the San Manuel police station with A.W. In the restroom at the police station, A.W. told K.Q., "[I]t burns to pee," and K.Q. observed blood on A.W.'s underwear.

¶3    K.Q. then took A.W. to Tucson Medical Center. A.W. told the doctor who examined her that Almanza "pulled [her] panties down and he was kissing [her]. He put his fingers in [her] and his fingernails are so sharp that they scratched [her]." The doctor noted that blood spots were on A.W.'s underwear. She also observed that A.W. had an abrasion at the base of her left labia minora, inside the labia majora, in an area that is "fairly well protected." The injury was consistent with "[s]omebody putting their fingers in her private parts and scratching her."

¶4        Police officers picked up Almanza the next morning and took him to the San Manuel police station. He was released after questioning but subsequently was arrested and charged with one count of sexual conduct with a minor under the age of fifteen. He was convicted and sentenced by the trial court to life imprisonment with no possibility of release until he had served thirty-five years. Almanza timely appealed.

## Discussion

### Denial of Motion to Suppress

¶5        Almanza argues the trial court erred in denying his motion to suppress statements he made to detectives. We review the denial of a motion to suppress for an abuse of discretion but review legal conclusions de novo. *State v. Kinney*, 225 Ariz. 550, ¶ 13, 241 P.3d 914, 919 (App. 2010). We consider only the evidence presented at the suppression hearing. *State v. Spears*, 184 Ariz. 277, 284, 908 P.2d 1062, 1069 (1996).

¶6        After police officers took Almanza to the police station, they first placed him in a secure holding cell, and then moved him to a conference room for questioning. Detective Randall Snyder questioned Almanza in English, and Detective Luis Vargas asked questions in Spanish and relayed Almanza's responses to Snyder.[1]

¶7        Almanza received *Miranda*[2] warnings in English and Spanish. At one point, Almanza appeared confused about whether

---

[1]Citations to the interview are taken from the transcripts that were attached to the state's response to Almanza's suppression motion. Those transcripts included portions of the interview conducted in English, and translations of the portions conducted in Spanish. At the suppression hearing, Snyder apparently testified from another version of the transcript that contained slightly different translations. That version of the transcript is not part of the record. Although some transcribed statements were attributed to another detective who was present during the interview, the statements actually were made by Vargas.

[2]*Miranda v. Arizona*, 384 U.S. 436 (1966).

he needed a lawyer, and Snyder explained that he was not telling Almanza he needed a lawyer, but instead that he had a right to have one present during the interview. Almanza initially stated in Spanish that he wanted them to ask him questions because he wanted "to know what this is all about." But when Vargas asked him in Spanish if he understood his rights and wanted to answer questions, Almanza responded, "No." Vargas then asked, "You don't want to answer questions?" Almanza responded that he did. Snyder told Almanza he could stop the interview at any time and then continued questioning Almanza in English. Almanza consistently answered the questions in English.

¶8 Almanza initially denied he had touched A.W., but eventually admitted he had hugged her and kissed her cheek. After Snyder told Almanza his DNA[3] was found on A.W., Almanza admitted he had picked her up and carried her with one hand under her buttock. He denied he had put his finger into A.W.'s vagina, but when Snyder asked him, "if his finger went into her [vagina]," which finger would it have been, Almanza indicated the middle finger on his left hand. Almanza never refused to answer the detectives' questions or asked to speak with an attorney.

¶9 Almanza filed a motion to suppress the statements he had made to the detectives, asserting the statements were involuntary and violated his Fifth and Sixth Amendment rights. Specifically, he argued he did not understand the *Miranda* warnings and the detectives continued to question him even after he indicated he did not want to answer their questions. The court denied Almanza's motion to suppress, stating, "Miranda [warnings were] properly given both in English and Spanish." The court also observed that, although it was clear that English is not Almanza's first language, "he did respond to questions asked in a manner that was consistent with the questions." The court reasoned, "[h]is questioning of the officers, and even saying no and then yes, indicates that ultimately he did understand those rights when they were explained to him." The court stated that Almanza "got a clear explanation," "he ultimately understood [the *Miranda* warnings],

---

[3]Deoxyribonucleic acid.

4

and he understood [them] before the bulk of the statements were given or the questions were asked." The court also stated, "[T]here's no indication of any coercion or duress." Thus, the court concluded, Almanza gave the statements voluntarily.

¶10       Almanza suggests the statements he made to detectives were inadmissible because he did not knowingly, intelligently, and voluntarily waive his Fifth and Sixth Amendment rights. "In order to be admissible, statements obtained while an accused is subject to custodial interrogation require a prior waiver of *Miranda* rights."[4] *State v. Carter*, 145 Ariz. 101, 105, 700 P.2d 488, 492 (1985).

> In determining whether a defendant has voluntarily, knowingly and intelligently waived his rights, a court must assure that the state establishes two factors: "First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."

*In re Andre M.*, 207 Ariz. 482, ¶ 7, 88 P.3d 552, 554 (2004), *quoting Moran v. Burbine*, 475 U.S. 412, 421 (1986). We look to the totality of the circumstances, including Almanza's background, experience, and conduct. *See State v. Rivera*, 152 Ariz. 507, 513, 733 P.2d 1090, 1096 (1987).

---

[4]We assume Almanza was subject to custodial interrogation for *Miranda* purposes. *See State v. Kennedy*, 116 Ariz. 566, 568-69, 570 P.2d 508, 510-11 (App. 1977) ("The '*Miranda* warning' is required to be given prior to custodial interrogation which is defined as questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."). The state does not challenge this assumption.

¶11            It is undisputed that Almanza's native language is Spanish and he neither reads nor writes in Spanish or English. He received *Miranda* warnings in both languages, and the trial court concluded those warnings were proper. Most of the interview was conducted in English, but Almanza never asked that the interview be conducted in Spanish, and, as the court found, he answered Snyder's questions appropriately in English.

¶12            Although Almanza expressed confusion about whether he needed a lawyer, the trial court found that the detectives adequately explained his rights. Almanza stated he understood them and twice responded that he wanted to answer the detectives' questions. He did not request that the questioning cease or ask to speak to an attorney.

¶13            Almanza does not argue, and we find nothing in the record to suggest the detectives used "'intimidation, coercion, or deception'" to induce Almanza to waive his rights. *In re Andre M.*, 207 Ariz. 482, ¶ 7, 88 P.3d at 554, *quoting Moran*, 475 U.S. at 421. Although the trial court did not explicitly find that Almanza knowingly, intelligently, and voluntarily waived his *Miranda* rights, that finding was implicit in the court's denial of the motion to suppress. We see no error in that conclusion.

¶14            Almanza argues that he invoked his right to remain silent, and the interrogation should have ceased at that point. "If a person subjected to custodial interrogation invokes his right to silence, the interrogation must cease." *State v. Finehout*, 136 Ariz. 226, 229, 665 P.2d 570, 573 (1983). "An invocation of the right to silence must be unequivocal and unambiguous, as judged from the perspective of a reasonable officer under the totality of the circumstances." *State v. Payne*, 233 Ariz. 484, ¶ 40, 314 P.3d 1239, 1256 (2013). However, "[i]f an invocation is ambiguous or equivocal, 'the police are not required to end the interrogation . . . or ask questions to clarify whether the accused wants to invoke his or her *Miranda* rights.'" *Id.*, *quoting Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010) (alteration in *Payne*).

¶15 After Snyder clarified that Almanza did not necessarily need a lawyer, but had a right to have one present if he so desired, the following exchange occurred in Spanish:

> VARGAS: This is just to ask you . . . They have some questions for you. They can't begin with these questions or explain what is going on if you don't want.

> ALMANZA: But I want. I want them to ask me so I can tell what they want.

> . . . .

> VARGAS: Do you understand your rights and do you want to answer questions?

> ALMANZA: No.

> VARGAS: You don't want to answer questions?

> ALMANZA: Yes, I want to answer them. But I want them to ask me what, what it is they want to know or what.

Vargas explained to Snyder that Almanza had first said he did not want to answer questions, and then said he did. Snyder then asked, "You understand that as we go through, if you decide you want to stop answering questions, you can?" Almanza responded, "Okay."

¶16 Almanza argues that when he responded "No" to Vargas's question, the interrogation should have stopped.[5]

_____

[5]Although Almanza referred to his negative response to Vargas's question in his motion to suppress and provided authority regarding the requirements for a valid waiver of rights under *Miranda*, he did not argue that his rights were violated when Vargas continued to question him after his negative response, and the trial court did not address this issue.

7

However, by that point, Almanza already had indicated once that he wished to answer the detectives' questions. Thus, the negative answer was ambiguous in light of Almanza's earlier statements. Because Almanza initially responded yes, then said no, when asked if he understood his rights and wished to answer the detectives' questions, it was reasonable for Vargas to clarify whether Almanza intended to assert his right to remain silent. *See State v. Flower*, 161 Ariz. 283, 286, 778 P.2d 1179, 1182 (1989) (in the face of ambiguous silence, officer's "clear duty was either to cease all interrogation or to clarify whether [defendant] was exercising his right to silence"); *Finehout*, 136 Ariz. at 229, 665 P.2d at 573 (when invocation of right to remain silent is ambiguous, "the limit of permissible continuing interrogation immediately after the assertion would be for the sole purpose of ascertaining whether the defendant intended to invoke his right to silence"). To the extent Almanza attempted to invoke his right to remain silent, his invocation was not "unequivocal and unambiguous." *Payne*, 233 Ariz. 484, ¶ 40, 314 P.2d at 1256.

¶17 Almanza contends the *Miranda* warnings he was given were defective in two respects, so that any waiver of his rights could not have been knowing, intelligent, and voluntary. First, he argues "the police never told [him] an attorney would be free. Second, the police never told him the attorney would be present now or during questioning as opposed to off in the future sometime." Almanza claims he was misinformed when Snyder told him an attorney could be appointed "at a later time."

¶18 In *State v. Carlson*, we stated,

> The essential information that must be conveyed to a suspect in a *Miranda* advisory is "[1] that he has the right to remain silent, [2] that anything he says can be used against him in a court of law, [3] that he has the right to the presence of an attorney, and [4] that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires."

228 Ariz. 343, ¶ 8, 266 P.3d 369, 372 (App. 2011), *quoting Florida v. Powell*, 559 U.S. 50, 59-60 (2010). "If the sum total of statements in a *Miranda* advisory reasonably conveys the essential information, the warning will be deemed constitutionally adequate." *Id.* ¶ 9.

¶19        Here, the warnings, which were given in English and Spanish, reasonably conveyed the essential requirements of a *Miranda* warning. Snyder told Almanza in English, "If you cannot afford to hire a lawyer, one will be appointed to represent you free of any cost to you." Snyder also told him, "You have the right to talk to a lawyer and have your lawyer present while you're being questioned." Vargas told him in Spanish, "You have the right to speak with a lawyer and to have the lawyer present with you during interrogation. If you can't hire a lawyer, one will be designated to represent you before the interrogation begins if you want." Thus, we see no error in the trial court's finding that the *Miranda* warnings were proper.

¶20        Almanza additionally argues that Vargas was not qualified to interpret during the interview. However, Almanza cites no authority for the proposition that a police officer who speaks Spanish may not translate during an interview. Furthermore, Almanza had access to the recording and translation of the interview, and he does not argue that Vargas inaccurately translated any particular word or phrase during the interview. We see no reason to disturb the trial court's denial of the suppression motion based on Vargas's translation during the interview.

¶21        Although Almanza suggests his statements were involuntary because Snyder falsely told him his DNA had been found on A.W., he does not point to any incriminating statement he made because of the detective's untruthful representation. Instead, he argues that "[t]hese were statements calculated to persuade [him] to change his mind about ending the interrogation." But whether a statement is given voluntarily and whether a *Miranda* violation has occurred are distinct inquiries. *Montes*, 136 Ariz. at 494, 667 P.2d at 194. "Under Arizona law, statements or confessions by an accused are prima facie involuntary and the state has the burden of proving the voluntariness of such statements." *State v. Emery*, 131 Ariz. 493, 498, 642 P.2d 838, 843 (1982). We review the trial court's

9

determination on the admissibility of a defendant's statements for clear and manifest error. *State v. Newell*, 212 Ariz. 389, ¶ 22, 132 P.3d 833, 840 (2006).

¶22    Almanza argues that he "respond[ed] to [Snyder's] provocative lying statements that there was DNA evidence against [Almanza]." "Generally, deception alone does not render a statement inadmissible, but the voluntariness of the waiver of a [F]ifth [A]mendment right must be decided when viewed in relation to the totality of the circumstances." *State v. Winters*, 27 Ariz. App. 508, 511, 556 P.2d 809, 812 (1976). "A statement induced by fraud or trickery is not made involuntary unless there is additional evidence indicating that the defendant's will was overborne or that the confession was false or unreliable." *Id.* Here, Snyder testified that no promises or threats were made to Almanza, and the interview transcript confirms his testimony. *See State v. Huerstel*, 206 Ariz. 93, ¶ 51, 75 P.3d 698, 710 (2003). Almanza does not argue the setting of the interrogation or its duration were coercive or that the detectives asked him improper questions. *See State v. Blakley*, 204 Ariz. 429, ¶ 27, 65 P.3d 77, 84 (2003). There is no indication that Almanza's "will was overborne" or that his statements were "false or unreliable." *Winters*, 27 Ariz. App. at 511, 556 P.2d at 812. Accordingly, we conclude the trial court did not err in finding Almanza's statements were voluntary.

## K.Q.'s Testimony Regarding Prior Bad Acts

¶23    Almanza argues the trial court erred by admitting K.Q.'s testimony regarding "prior bad acts" by Almanza. Almanza's attorney asked K.Q. on cross-examination whether she remembered ever punching Almanza in the face. K.Q. responded that she did and stated that he "behaved inappropriately" with her, so she "turned around instinctively and [she] punched him." On redirect, the prosecutor asked K.Q. to explain what she meant when she said Almanza was inappropriate. K.Q. stated, "He came up behind me and he pressed his body against me.... [H]e pressed himself up against me and I felt him in a way I did not want to feel, so I turned around and I punched him." She also described two other incidents of inappropriate behavior.

¶24　　Almanza admits that he did not object to K.Q.'s testimony at trial; therefore, we review only for fundamental, prejudicial error. *State v. Henderson*, 210 Ariz. 561, ¶¶ 19-20, 115 P.3d 601, 607 (2005). Almanza bears the burden of demonstrating "both that fundamental error exists and that the error in his case caused him prejudice." *Id.* ¶ 20. Although Almanza correctly identifies fundamental error as the proper standard of review, he does not argue that the alleged error was fundamental or caused him prejudice. Instead, Almanza erroneously states that "[t]he State bears the burden of showing error was harmless." Therefore, the argument that the court erred in admitting K.Q.'s testimony is waived. *See State v. Moreno-Medrano*, 218 Ariz. 349, ¶ 18, 185 P.3d 135, 140 (App. 2008).

### J.B.'s Testimony Regarding Incriminating Statements

¶25　　Almanza argues his Fifth Amendment right not to incriminate himself and his Sixth Amendment right to counsel were violated when the trial court admitted testimony regarding incriminating statements Almanza made to another inmate, J.B., while they both were incarcerated. Almanza approached J.B., who is fluent in Spanish, because he did not understand the charge against him. Almanza told J.B. that he did not understand how he could be charged with child molestation when he had inserted his finger, not his penis, into A.W.'s vagina. J.B. contacted detectives, including Snyder, and reported what Almanza had told him.

¶26　　Almanza did not object to J.B.'s testimony at trial. Therefore, we review only for fundamental, prejudicial error. *Henderson*, 210 Ariz. 561, ¶¶ 19-20, 115 P.3d at 607. Almanza does not argue that the trial court committed fundamental error when it admitted J.B.'s testimony. Therefore, the issue is waived. *Moreno-Medrano*, 218 Ariz. 349, ¶ 17, 185 P.3d at 140.

### Motion for Judgment of Acquittal

¶27　　Almanza argues the trial court erred in denying his motion for a judgment of acquittal pursuant to Rule 20, Ariz. R. Crim. P., because the state failed to prove all of the elements of child molestation. We review de novo a trial court's denial of a motion for

a judgment of acquittal, "viewing the evidence in a light most favorable to sustaining the verdict." *State v. Bible*, 175 Ariz. 549, 595, 858 P.2d 1152, 1198 (1993). Rule 20, Ariz. R. Crim. P., provides that the court "shall enter a judgment of acquittal" after the presentation of either side's evidence "if there is no substantial evidence to warrant a conviction." "Substantial evidence is more than a mere scintilla and is such proof that 'reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt.'" *State v. Mathers*, 165 Ariz. 64, 67, 796 P.2d 866, 869 (1990), *quoting State v. Jones*, 125 Ariz. 417, 419, 610 P.2d 51, 53 (1980). We will reverse "only if there is 'a complete absence of probative facts to support a conviction.'" *State v. Paris-Sheldon*, 214 Ariz. 500, ¶ 32, 154 P.3d 1046, 1056 (App. 2007), *quoting State v. Alvarez*, 210 Ariz. 24, ¶ 10, 107 P.3d 350, 353 (App. 2005), *vacated in part on other grounds*, 213 Ariz. 467, 143 P.3d 668 (App. 2006).

¶28 There was ample evidence of Almanza's guilt. A.W. testified that Almanza had pulled up her dress, pulled down her underwear, and put his finger in her. K.Q.'s testimony regarding A.W.'s account of what Almanza did was consistent with A.W.'s testimony. The doctor and nurse who examined A.W. both observed an abrasion on her genital area that was consistent with someone scratching her, and they both testified that A.W. told them Almanza had put his finger in her. J.B. testified that Almanza admitted inserting his finger into A.W.'s vagina. We therefore conclude there was substantial evidence to support Almanza's conviction. The court did not err in denying Almanza's motion for judgment of acquittal.

*was their an ~~DNA~~ evidence.*

## Disposition

¶29 For the foregoing reasons, we affirm Almanza's conviction and sentence.

# Exhibit III
Notice of PCR - by Defendant

FILED PINAL COUNTY
SUPERIOR COURT
AMANDA STANFORD

MAR 19 2015

1   Name Fernando Segoviano Almanza
2   Address Eyman Smu-1 -3-C-33 P.O. Box 4000
    City,State,Zip Florence AZ 85132

3   Superior _____ COURT   Pima _____ County, Arizona
4

5
6   | STATE OF ARIZONA, plaintiff -vs- | [CASE/COMPLAINT NO.] CR201103026 | NOTICE OF POST-CONVICTION RELIEF |
7   | Fernando Segoviano Almanza | | |
8   | Defendant (FIRST, MI, LAST) | | |
9

10                  NOTICE OF POST-CONVICTION RELIEF

11  Instructions: When the notice is complete, file it with the clerk of the superior court of the
12  county in which the conviction occurred.

13  A person unable to pay costs of this proceeding and to obtain the services of a lawyer without
    substantial personal or family hardship should indicate this by requesting counsel in Question 8
14  of this notice and execute the affidavit of indigency on page 3. In the event an attorney is not
    appointed, a Request for Preparation of Post-Conviction Relief Record form must be filed by the
15  defendant if some portion of the record is needed and has not previously been obtained.

16  No issue which has already been raised and decided on appeal or in a previous petition for post-
    conviction relief may be used as a basis for a successive petition for post-conviction relief.

17  1.    Defendant's Name: Fernando Almanza-Segoviano
18        Defendant's prison number (if any): ADC# 140967

19  2.    Defendant's address: Eyman Smu-1 3-C-33, P.Box 4000,
20  Florence AZ 85132

21  3.    (A)   Defendant was convicted of the following crimes: Sexual Conduct
    with a minor under the age of twelve

22        (B)   Defendant was sentenced on * 1-10 , 20 14, to a term of
23  life           , commencing on _____ , 20___ , following a:

24        [✓]   Trial by Jury

25
26        [ ]   Trial to Judge without a Jury

27        [ ]   Plea of Guilty

28        [ ]   Plea of No Contest

          [ ]   Probation Revocation Admission

1    [ ]   Probation Revocation Violation Hearing in the Superior Court in
2          _____ County with judicial officer _____ presiding.

3    (C)   The file number of the case was CR- 20110302 6 .

4.   Defendant has taken the following actions to secure relief from his convictions or
     sentences:

     (A)   Direct Appeal:                    [ ✓ ] Yes            [ ] No

     (B)   Previous Rule 32 Proceedings:     [ ] Yes             [ ✓ ] No

5.   Defendant was represented by the following lawyers at: (provide name of counsel and
     counsel's address, if known)

     Trial or change of plea: _Paul D Green_____

     Sentencing Hearing: _____

     Appeal (if any): _Lynn T Hamilton, Mesa_____

     Previous Rule 32 proceedings (if any): _____

6.   Is the defendant raising a claim of ineffective assistance of counsel?  [X] Yes [ ] No

7.   Defendant is presently represented by a lawyer:    [ ] Yes      [X] No
     If yes, provide name and address: _____

8.   If you are not currently represented by a lawyer, do you want the court to appoint a
     lawyer for this proceeding?                         [X] Yes     [ ] No

9.   **Respond to this section only if this is an untimely notice or the defendant has filed a
     previous Rule 32 petition in this case.**

     (A)   Is a claim pursuant to Rule 32.1(d), (e), (f), (g), or (h) being raised in this
           petition?    [X] Yes      [ ] No

     (B)   If yes, state the specific exception:

           [ ]   The defendant is being held in custody after the sentence imposed has
                 expired.

           [ ]   Newly discovered material facts exist which probably would have
                 changed the verdict or sentence.

           [X]   The defendant's failure to file a timely notice of post-conviction relief or
                 notice of appeal was without fault on the defendant's part.

- 2 -

1   [ ]   There has been a significant change in the law that would probably
          overturn the conviction or sentence.

2
3   [ ]   Facts exist which establish by clear and convincing evidence that the
          defendant is actually innocent.

4   (C)   State the facts that support the claim and the reasons for not raising the claim in
          the previous petition or in a timely manner.

5   Fernando Almanza Segoviano Does not read english
6   So he did not know the court of appeal had reached
7   It's verdic. Fernando was never informed by his Attorney
8   he had the opportunity to file a post conviction
9   relief. I (David Gonzales) read The letter from Fernandos
10  Attorney and informed him The Court of Appeals affirmed
11  his Conviction and sentence. I explained to Fernando
    his next course of action was a Post Conviction relief.
12  I respectfully request this Court to allow Fernando to
    file this untimely notice of post conviction relief. Fernando states
    he is innocent.

13  I am requesting post-conviction relief. I understand that I must include in my petition every
    ground for relief which is known and which has not been raised and decided previously. I also
14  understand that failure to raise any known ground for relief in my petition will prohibit me from
    raising it at any future date.

15  1 -25-15                           x FERNANDO S ALMANZA
16  Date                                 Defendant

17

18                          AFFIDAVIT OF INDIGENCY

19  I have requested the appointment of a lawyer to represent me in post conviction proceedings. I
    swear under oath and penalty of perjury that I am indigent and because of my poverty I am
20  financially unable to pay for the cost of a lawyer to represent me without incurring substantial
    hardship to myself or my family.

21

22  x  02/12/2015                        x FERNANDO SALMANZA
23  Date                                 Defendant

    State of Arizona   Arizona  )      Subscribed and sworn to or affirmed before me on:
24                               ) ss.
    County of    Pinal           )       D. TUCKER  12/ 2015
25
                                        Notary Public - State of Arizona
                                        PINAL COUNTY
                                        My Commission Expires
26                                      December 29, 2018

    Dec. 29, 2018
27  My Commission Expires              Notary Public

28  Form 24(b). Notice of Post-conviction Relief (*effective 1/1/08*)

- 3 -

# Exhibit IV

Motion For Fast and Speedy trial

FILED
CHAD A ROCHE
CLERK OF SUPERIOR COURT

12 FEB 23 AM 9 00

BY _____ DEPUTY.

In The Superior court In The
State of Arizona and County of _____

|  |  |
|---|---|
| State OF Arizona Plaintiff. V. Fernando Almanza Defendant. | Case no: Cr 201103026 Motion For Fast and Speedy Trial |

Comes now Defendant Fernando
Almanza In pro-se And Ask The courts
To envoke my Right to a Fast and speedy
Trial.

Submitted This 15 Th day of Febuary
2012

RCO
3.5.12 PM
CM

x Fernando Almanza
Defendant

# Exhibit V

## Arguments Brief

Fernando Segoviano Almanza
ADC# 140967
ASPC-E-SMU I
P.O. Box 4000
Florence, Ariz. 85132

In the United States District Court
for the District of Arizona

| Fernando Segoviano Almanza | Case No. N/A |
| Petitioner, proper, | Pinal County Superior Court No: |
| vs. | CR2011-03026 |
| Charles L. Ryan | Arizona Court of Appeals, Div. II No: |
| Respondent | 2CA-CR2014-0034 |
| | Argument brief |

I, Fernando Segoviano Almanza, Petitioner, proper, do hereby file this argument brief. I only file this brief through and by a fellow inmate. I am illiterate in spanish and english. I ask the court to take my educational and mental deficiencies into account when reviewing my petition, I also ask the court to take into consideration that I must first find an interpreter intelligent enough to read, interpret, translate and write my brief and petition.

## Argument

Ground 1) Did the Court err in determining Appellant's statements were voluntary.

Judge Johnson determined there was no arrest, merely investigation and that the Miranda warnings

1  were properly given. That Mr. Almanza waived his
2  Miranda rights and wanted to talk to police. And
3  that Mr. Almanza's english was good enough.
4    Records show that Mr. Almanza was cuffed
5  and transported by police to the Pinal County
6  Sheriff's office detention. He was not free to
7  leave. The court clearly erred in ruling Mr. Almanza
8  was not in custody.
9    Mr. Almanza clearly stated "NO" when asked if he
10  understood his rights and the want of answering questions.
11  I have known Almanza for a few short months. I am no
12  expert but even a layman can see Mr. Almanza has a very
13  difficult time understanding even normal, simple issues. In
14  no way was Mr. Almanza knowingly and willingly capabable of
15  understanding his Miranda rights. Including getting the
16  assistance of a lawyer at a critical time, such as an
17  interrogation. The officers are trained personnel. They
18  should have realized that Mr. Almanza was having great
19  difficulty understanding the Miranda warnings. Add to
20  that having an unqualified interpreter, who is biased,
21  assist Mr. Almanza.
22    This was clearly not a harmless error in the
23  erroneous evidentiary ruling. As the Supreme Court has
24  consistently ruled that reversal is required when the
25  defendant shows that the erroneous evidentiary ruling
26  violated due process, that their was substantial and injurious
27  effect on the verdict. As Brecht V. Abrahamson, 507 U.S.
28  619, 637-38, 113 S. Ct. 1710, 1722, 123 L.Ed 2d 353 (1993)
29  demonstrates. Mr Almanza asks for this Court to

review all documents, briefs etc. and reverse
the conviction. If needed an evidentiary hearing with
assistance of counsel be ordered to further show the
ruling was erroneous.

Ground (II) (two). Was it fundamental error to
admit to Rule 404 (b) Prior bad acts evidence.

The record shows there was no 404 (b) hearing
or objection from trial counsel. There was no
connection to Ms Q's (accusers mother) unsubstantiated
allegations of sexual harassment to the "victims"
allegation of sexual misconduct.

The appellate court did not rule on the merits
of the fundamental error due to appellate counsel
stating the state beared the burden of showing the
error was harmless. Causing a waiver of the error.
This court now must determine if the error was
harmless. The court record shows the error was
not harmless. The errors were compounded by
trial counsels egregious lackluster performance and
appellate counsels using the wrong standard of review.
Therefore the errors were not harmless and were prejudicial.
While a Rule 32 will or should be filed and ruled upon
that counsels were Ineffective for their egregious
errors this court must review this petition and
reverse on fundamental errors affected Mr Almanza's right
to a fair trial.

See Birt v. Montgomery, CA 11 (Ga.) 1984, 725 F.2d 587,
rehearing denied 729 F.2d 1468, certiorari denied 105 S. Ct. 232,
469 U.S. 874, 83 L.Ed.2d 161 "When counsel is found to be

ineffective, court will not bind defendant to state procedural waiver of possible constitutional defenses and the issue may be considered in federal habeas corpus.

Mr. Almanza's Rule 32 (IAC) counsel has abandoned the case without notice, therefore no Rule 32 has been filed. The record still shows IAC. Preventing Mr. Almanza from furthering his appeal. Further these state law violations were so flagrant, in its totality, that Mr. Almanza was denied due process, requiring reversal. See Bowling V. Parker, 344 F.3d 487, 502 n.9, 2003 FED APP. 0330 (6th Cir 2003).

Ground 3)(III) Were appellants 5th and 6th Amendment rights violated when a jailhouse snitch obtained incriminating statements from appellant.

Boggs (jailhouse snitch) took advantage of Mr. Almanza's predicament to view his records. Then used the information to contact detectives stating Mr. Almanza confessed to molesting the accuser. At no time did Mr. Almanza ever admit to penetrating the accuser. The snitch and detectives took advantage of an uneducated, mentally deficient inmate. I, a fellow inmate, have had extensive talks with Mr. Almanza. He never once stated he molested the accuser. Mr. Almanza did show his inability to understand his predicament, and still does. A mental exam was conducted. Mr. Almanza, in the interest of justice needs to have an evidentiary hearing with competent counsel. See Armstrong v. Kenna, CA 8 (MO) 2008, 534 F.3d 857, on remand 2009 WL 1109,548.

Ground 4) Did the court err in failing to grant a directed verdict of acquital for insufficient evidence.

If the accusers statement that Mr. Almanza molested her then hit her on the back with a shovel are even remotely true, substantial evidence would have been found. None was. So what occurred. The state had the mother testify that Mr. Almanza molested and harassed her. Yet no witnesses were brought forward to verify the mothers made up allegations. A jailhouse snitch was placed (a g.p. inmate) with Mr. Almanza (a S.O. inmate). The snitch saw the allegations and used Mr. Almanza's predicament and ignorance to take advantage. The detectives compounded it by using a career criminal with a checkered past. Then giving the snitch a sweetheart deal

No trier of the evidence could have found the defendant guilty beyond a reasonable doubt. As Jackson V. Virginia, 443 US. 307, 99 S.Ct. 2781, 61 L.Ed. 2d 560 (1979) dictates Mr. Almanza's conviction should be overturned. See also Winship, 397 US. 358, 90 S.Ct. 1068, 25 L.Ed. 2d 368 (1970) also: US. V. Nevils 598 F.3d 1158, 1165 (9ᵗʰ Cir 2010) (enbanc) and Cavazos v. Smith, 565 US. 1,—, 132 S.Ct. 2, 4, 181 L.Ed. 2d 39 (2011). Thereby reversal is appropriate.

I, through a fellow inmate, ask the court to also hold my habeas petition to less stringent standards as one submitted by lawyes per Bell v. Ercole, S.D.N.Y. 2009, 631 F.Supp. 2d 406. Habeas Corpus site key 668. This interpreter and Mr. Almanza thank the court for its time and patience. Respectfully, submitted this 30ᵗʰ day of September 2015.

## Certificate of Service

I certify that a copy of the foregoing was mailed this 30th day of September 2015 to:
E-Filed by Prison-ADOC, Per new Policy
US. District Court Clerk
US. Courthouse, Suite 130
401 W. Washington St. SPC 10
Phoenix, Arizona 85003



Fernando Segoviano Almanza
XFERNANDOALMANZA